[Civ. No. 5207. Fourth Dist. Feb. 3, 1956.]

STANLEY SZARAPSKI, a Minor, etc., Appellant, v. LOUIS A. JOAQUIN et al., Respondents

28

George A. Kuittinen for Appellant.

King & Mussell for Respondents.

BARNARD, P. J.—This is an action for damages resulting from a collision between a truck-tractor and trailers, driven by the defendant Sudgen and owned by the other defendants, and a Chevrolet automobile in which the plaintiff and three other soldiers were returning to March Field. A jury returned a verdict in favor of the defendants, and the plaintiff has appealed from the judgment.

The accident happened at 1 a. m. on February 25, 1952, on Highway 99. This was a divided highway, consisting of two eastbound lanes and two westbound lanes separated by a 70-foot island, with a hard surface shoulder adjacent to the eastbound lanes. Both vehicles were proceeding easterly. in the outside or southerly of the eastbound lanes.

Sudgen testified that he had been traveling at about 45 to 50 miles an hour; that shortly before the accident he had not passed any vehicles; that a truck and trailer outfit had passed him and was proceeding about a mile ahead of him in the same lane; that for 15 or 20 minutes before the accident it was the only vehicle ahead of him, traveling in the same direction, with lights which were visible to him; that a westbound truck approaching on the other side of the island flashed a spotlight and blinked it on and off; that this sort of signal is used by truck drivers either to hail another driver or to indicate that there is trouble ahead; that he looked over at the passing truck for about a second, but was not looking

at it as it went by; that "when he approached I glanced at him but not when he went by"; that when he looked ahead he saw the Chevrolet about 50 feet ahead of him; that he was going about 45 miles an hour when he saw the Chevrolet; that he turned his wheel to the left and applied his brakes, "and tried to miss it"; that his right bumper and fender struck the left rear of the Chevrolet; that he came to a stop on the shoulder, and walked back; that he saw three men lying on the shoulder; that he did not notice whether the Chevrolet's headlights were burning; that "I didn't pay any attention, I was trying . . ."; and that he saw that its taillight assembly was demolished.

He further testified that "about a second" elapsed from the time he first saw the Chevrolet until the impact; that the Chevrolet had no lights that he could see; that "it just loomed up in the night"; and that "it didn't have no lights I could see at all." When asked if the Chevrolet was in motion he replied, "It wasn't moving or it was moving awfully slow, it looked like it was stopped to me." When asked how far ahead his headlights would cast a beam, he replied: "I don't know. A 100 feet I imagine," and that "I never did measure it." When asked whether at the scene of the accident he had made a statement to the effect that the Chevrolet did not have its lights on, he replied: "I just said I didn't see no lights," and also that at the hospital and at the highway patrol office he had told the officer "I never seen no lights." He also testified that he never told the officer that the Chevrolet was in motion.

A highway patrol officer (Wilkins) testified that he arrived at the scene of the accident at 1:14 a. m.; that Sugden did not state to him that there were no lights on the Chevrolet, or that it was standing still; that from his investigation he formed the opinion that the Chevrolet was in motion when it was struck; and that Sugden told him at the scene that he did not know how fast the other car was going. The officer admitted, however, that he had testified at an inquest that Sugden had told him that he did not know whether the Chevrolet was going forward or was standing still. On cross-examination, the officer's testimony was rather thoroughly impeached by his own contradictory and confused statements. It was also brought out that he was no longer with the highway patrol, and that his severance was not voluntary on his part.

The plaintiff testified that he did not recall the accident, and that his only recollection was that they were on the road going to the base and of waking up in the hospital; that he and McNeil, who was one of the three persons in the car with him, owned the Chevrolet; that they bought this 1935 Chevrolet a week or two before the accident from a cook in the mess hall; that they paid $70 for it, and also gave the cook a 1936 Willys that did not have tires on it or a good engine; that he and the other three boys left the base about 1 p. m. on the afternoon before the accident and went to Fontana; that they and four girls then went on a picnic in the mountains; that they returned to Fontana about 6:30 and spent several hours at the home of one of the girls; that all eight of them then went for a ride in the Chevrolet; that after riding about an hour they all pooled their money and bought gas so they could get back to the base; that they then took the girls to their separate homes; and that they sat in the car and talked for about an hour at the home of the last girl to be delivered. He further testified that they checked the lighting system on the Chevrolet at the gas station where they got gas; that they had checked the lights that morning before they left the base; that they had checked the lights the night before that, while at the base; that they also checked the lights just before they left the last girl at her home; that on three of these occasions two or three persons helped check the lights, with one standing out back to see if the taillight was burning; and that he did not remember who was driving at the time of the accident, but did remember that they had checked the lights just before they left the home of the girl who was last taken home. Two of the girls testified that the lights on the Chevrolet were on when it left their homes.

A deputy sheriff testified that for a year and a half after July 1, 1952, he and Officer Wilkins were stationed at Twentynine Palms; that they were the only officers in that area and they worked together on many cases; that during that period he became acquainted with Wilkins' reputation in the community for truth, honesty and integrity; and that this reputation was bad. There was also evidence that Sugden had been on this trip for 14 hours; that he had a friend with him for part of the trip, who assisted in driving; that he was alone after he left Los Angeles; and that he had stopped five times on the trip for refreshments, the stops ranging from 20 minutes to an hour and a half.

▉ The appellant contends that the evidence is insufficient to support the verdict in that the only conclusion which can be drawn therefrom is that the defendants were guilty of negligence as a matter of law, and that there was no evidence of any contributory negligence which was a proximate cause of the accident. It is argued that Sugden was driving from 45 to 50 miles an hour, in violation of section 515, subdivision (a) of the Vehicle Code; that he violated section 531 of that code by following the Chevrolet too closely, citing *Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581 [177 P.2d 279]; and that he failed to keep a proper lookout for other vehicles on the highway since his attention was diverted by an approaching vehicle flashing its spotlight, citing *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834]. It is further argued that as to all these matters the question of proximate cause was one of law since but one inference could be drawn from the evidence; and that the issue of contributory negligence should not have been submitted to the jury since it depended on an inference that "an unlighted car could be driven on an unlighted highway," and the evidence upon which such an inference "would be based is inherently improbable."

Sugden estimated his speed at 45 miles per hour. There was no evidence as to the exact speed, but assuming that his speed was slightly in excess of that provided for in the statute the further question as to whether it was a proximate cause of the accident was one of fact for the jury. From the evidence as to the time and distance involved, and a consideration of how many feet the truck would travel in a second, it would seem that Sugden could not have avoided this accident had he been traveling 40 miles per hour, and the jury could draw that inference from the evidence. It cannot be said, as a matter of law, that Sugden was following the other vehicle more closely than was reasonable and prudent. There was substantial evidence that the only lighted vehicle visible to Sugden was preceding him by a distance of nearly a mile, and when he unexpectedly came upon a vehicle which was moving slowly or stopped, and perhaps unlighted, it cannot be said, as a matter of law, that he was following it in the sense intended by the statute. Violation of a code section is not negligence if excused by facts beyond the violator's control, the driver of a vehicle is not necessarily negligent because he collides with a preceding vehicle, and

the question as to whether this driver was negligent under the circumstances was a question for the jury. (*Elford* v. *Hiltabrand*, 63 Cal.App.2d 65 [146 P.2d 510]; *Wohlenberg* v. *Malcewicz*, 56 Cal.App.2d 508 [133 P.2d 12].) In the latter case, after reviewing many cases, the court said:

"The true rule established by those cases, and others (citing cases) is that in each case whether the operator of the rear car is negligent in colliding with the car in front depends upon all the circumstances, and presents a question of fact and not of law."

The question as to whether Sugden failed to keep a proper lookout for other vehicles depends on the circumstances involved, and is also a question of fact. It was past midnight, it was a divided highway, there were no intersections, he could see no other traffic ahead of him for nearly a mile, and whether he acted reasonably in looking over to see why the lights of the approaching truck were blinking clearly presented an issue of fact. With respect to all of these matters more than one inference could be drawn from the evidence, and it does not appear as a matter of law that any such negligence on the part of Sugden, if any there was, was a proximate cause of the accident. The question of contributory negligence was also properly left to the jury. That issue was pleaded, and there was enough evidence to justify its submission to the jury. The appellant was one of the owners of the Chevrolet, and questions were presented as to whether that vehicle was stopped on a main traveled highway, whether it was moving too slow without adequate warning, whether its taillight was burning, and whether it was negligently permitted to create a hazard. This car was 17 years old, and the fact that it was considered necessary or advisable to check its lights so many times during the preceding 24 hours might well tend to indicate that they were in a condition which would not inspire confidence. The suggested inference that "an unlighted car could be driven on an unlighted highway" is not inherently improbable. Under the evidence the question of contributory negligence was one of fact and not one of law.

It is next contended that the court erred in instructing the jury on unavoidable accident. There was evidence to support a finding that Sugden was driving on a divided highway late at night, that he unexpectedly and without negligence, came upon a stopped or slowly moving car which

was unlighted, and that he was then unable to avoid the accident. Neither error nor prejudice appears in submitting that issue to the jury.

Finally, it is contended that the court erred in admitting the testimony of the deputy sheriff with respect to Wilkins' reputation for telling the truth. It is argued that the deputy sheriff did not become acquainted with Wilkins until after the accident, and that he knew nothing about Wilkins' conduct with respect to this particular accident. This was a matter of general impeachment and, while it was objected to because this was not a criminal proceeding, no objection was made on the ground that it referred to a knowledge of reputation which was remote in point of time. No reversible error appears. In any event, it could hardly be held so prejudicial as to require a reversal in view of what clearly appeared in Wilkins' own testimony on cross-examination.

The judgment is affirmed.

Griffin, J., concurred.

Mr. Justice Mussell, being disqualified, does not participate herein.