962 So.2d 612 (2006)
Robert Lee GILES, Roberto Giles, A Minor, by and Through His Father and Next Friend, Robert Lee Giles, and Antonio Giles, A Minor, by and Through His Father and Next Friend, Robert Lee Giles, Appellants
v.
Robert A. BROWN and Leake County, Mississippi, Board of Supervisors, Appellees.
No. 2005-CA-01734-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied May 29, 2007.
Don H. Evans, Jackson, attorney for appellants.
Michael Jeffrey Wolf, Jackson, attorney for appellees.
*613 Before KING, C.J., SOUTHWICK and IRVING, JJ.
IRVING, J., for the Court.
¶ 1. Robert Giles and Robert Brown, a Leake County constable, were involved in a car accident that left Giles and his sons, Antonio and Roberto, injured.[1] The Gileses sued Brown, but after discovery in the matter, the Leake County Circuit Court granted summary judgment on behalf of Brown. Aggrieved, the Gileses appeal and assert that the court erred in granting summary judgment, because evidence exists that Brown acted either intentionally or with reckless disregard for the consequences of his actions.
¶ 2. Finding error, we reverse and remand in part and affirm in part.

FACTS
¶ 3. On September 17, 2003, Giles and his children were riding their ATV 4-wheeler along Highway 488 near Carthage, Mississippi. Brown received a call that there were individuals riding an ATV on the highway, which is against the law. Brown set out in response to the call and encountered Giles.[2] Brown, with emergency lights activated, pulled behind Giles. Giles pulled off the road onto an unidentified piece of property. Brown asked Giles for his license, and Giles informed Brown that his license was suspended. Neither man left his respective vehicle during the exchange.
¶ 4. What happened next is disputed. According to Brown, Giles became belligerent and eventually cursed at Brown before leaving and returning to the highway on his ATV. Brown testified that he followed with lights and siren activated until Giles made a sudden turn, causing the accident at issue. Brown testified that he did not know whether he had hit Giles's vehicle or Giles's children. Brown indicated that he had attempted to slow down and avoid the accident, but was unable to do so and went into a ditch. Brown suggested that he might have been able to avoid the accident if Giles had activated his turn signal or given some other indication that he was about to turn.
¶ 5. According to Giles, he explained to Brown that he did not have his license, but did live nearby and suggested that he would take Brown to his house so that Brown could confirm that Giles lived nearby. Giles believed that if he did so, Brown would be more likely to let him go with simply a warning. Giles testified that he never cursed at Brown. Giles averred that he then pulled out onto the road, with the understanding that Brown would follow him to his house. Neither Giles nor his sons could recall hearing Brown's siren or seeing any emergency lights as Brown followed them down the road. In fact, Giles testified that he never looked back to confirm that Brown was following him. He simply assumed that, because of their exchange and his slow pace, Brown would follow. Giles testified that he slowed down considerably for his turn, although he admitted that he did not activate a turn signal or otherwise indicate that he was about to turn. Giles testified that Brown's vehicle hit the ATV, causing Giles and his sons to fall off and causing the ATV to collide with a third vehicle at the intersection.
¶ 6. It is not clear exactly how fast the parties were traveling. Brown indicated that they might have been going as fast as *614 forty to forty-five miles per hour, while the Gileses estimated their speed to be closer to twenty to twenty-five miles per hour. Giles and his sons also testified that they slowed down significantly for the turn that eventually resulted in the accident. Amber Wilcher, the driver of the vehicle that was hit by the ATV at the intersection, testified that she saw Brown hit Giles's vehicle before the ATV collided with her car. She also thought that Brown's vehicle might have collided with her own. Apparently no photographs were taken of the damage to the various vehicles, or such photographs were not included as part of the record. An accident report was filled out, but the version of events related was clearly given by Brown, as the officers filling out the report made no independent findings to explain what had happened. As a result of the accident, Giles suffered an injury to his right foot which required thirteen stitches, Roberto had scrapes on his body, and Antonio suffered two broken legs and a broken pelvis. Criminal charges were filed against Giles as a result of the accident, and he pled guilty to reckless driving, improper equipment, improper restraint, and two simple assault charges.
¶ 7. After discovery, the court granted summary judgment, largely based on a finding that the affidavit given by Wilcher as to how the accident occurred was not reliable because of conflicting deposition testimony. The court also declined to give any significant weight to the affidavits of Antonio and Roberto because the affidavits "may be flawed due to their age." The court noted that Giles's deposition testimony indicates that he was, at all times, watching the road in front of him and he therefore had little knowledge of what happened behind him or how Brown collided with the ATV. The court found that Brown was not acting with reckless disregard in his following of the vehicle, and also noted that both Antonio and Roberto acknowledged that "they knew it was illegal to ride the ATV on public highways and in the manner in which they drove." In its reasoning, the court noted that Giles had pleaded guilty to several misdemeanors as a result of the incident and found that "[t]his is significant in that it mitigates against Plaintiff's claim that Robert Brown was driving recklessly. . . . Brown perceived a crime had been committed in his presence, and he was in hot pursuit."
¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issue.

ANALYSIS AND DISCUSSION OF THE ISSUE
Standard of Review
¶ 9. We review a lower court's grant of summary judgment de novo. Citifinancial Retail Servs. v. Hooks, 922 So.2d 775, 779(¶ 16) (Miss.2006). Summary judgment is only properly granted when no genuine issue of material fact is shown to exist. Id. at 779(¶ 17) (citing M.R.C.P. 56(c)). "[T]he non-moving party should be given the benefit of every reasonable doubt." Id. (citing Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990)). "Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." Id. at 779(¶ 18) (quoting Tucker, 558 So.2d at 872).
Standard for Recovery Under Mississippi Tort Claims Act
¶ 10. The Gileses' recovery is governed by the Mississippi Tort Claims Act (MTCA), which is found at Mississippi Code Annotated section 11-46-1, to 11-46-23. The Gileses argue that section 11-46-9(1)(c) applies, while Brown and Leake *615 County (Brown) argue that both 11-46-9(1)(c) and 11-46-9(1)(d) apply. In response to Brown's contention that he is also immune under 11-46-9(1)(d), the Gileses argue that it makes no sense to apply section 11-46-9(1)(d), because section 11-46-9(1)(c) specifically applies to claims arising out of an act committed by an employee of a governmental entity while that employee was performing a law enforcement function.[3] We agree with the Gileses that section 11-46-9(1)(c) is the applicable section based on the facts of this case. See Collins v. Tallahatchie County, 876 So.2d 284, 289(¶ 16) (Miss.2004) (clarifying the holding in L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136 (Miss. 1999) to make clear that the exercise by a governmental entity of conduct that is "of a discretionary nature" does not mean that the governmental entity is exercising or performing a discretionary function within the meaning of section 11-46-9(1)(d)).
¶ 11. Under 11-46-9(1)(c), Brown has immunity from liability unless he acted with reckless disregard for the Gileses' safety and well-being when the Gileses were not engaged in criminal activity. Miss. Code Ann. § 11-46-9(1)(c) (Supp. 2005). "Reckless disregard" has been defined by the Mississippi Supreme Court as "a higher standard than gross negligence [that] `embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" City of Greenville v. Jones, 925 So.2d 106, 110(¶ 11) (Miss.2006) (quoting City of Jackson v. Powell, 917 So.2d 59, 71(¶ 44) (Miss.2005)). The Mississippi Supreme Court has also directed that the "criminal activity" contemplated by the statute must have "some causal nexus to the wrongdoing of the tortfeasor." Powell, 917 So.2d at 69(¶ 36) (quoting City of Jackson v. Perry, 764 So.2d 373, 379(¶ 25) (Miss. 2000)).
Criminal Activity
¶ 12. The Gileses contend that they presented evidence showing a genuine issue of material fact on this point because "the offenses to which Giles pleaded guilty, e.g., improper restraints, etc., were not related to the accident." The Gileses also note that Antonio and Roberto have not been charged with any criminal counts as a result of the incident. The Gileses further contend that, even if Antonio and Roberto were engaged in some sort of criminal activity, "that activity was not causally connected to Brown's assaulting them with his police car."
¶ 13. We find that this limitation bars Giles from proceeding with his case, but does not bar his children from proceeding. Despite Giles's argument that his offenses "were not related" to the incident, we find that the offenses do bear a "causal nexus" to Brown's wrongdoing. Simply put, Giles's criminal activity was driving on the highway on an ATV and driving with a suspended license, among other offenses. We fail to see how there is no causal nexus between Giles's illegal driving on the highway and Brown's collision with him on the same highway. Clearly, if Giles had not been engaged in the criminal activity in question, there would have been no accident. This is especially true of Giles's decision to proceed down the road away from Brown instead of stopping and receiving a ticket after Brown's initial stop of him. Giles pled guilty to "reckless driving," defined by Mississippi Code Annotated section 63-3-1201 (Rev.2004) as driving "any vehicle in such a manner as to indicate *616 either a willful or a wanton disregard for the safety of persons or property. . . ." We fail to see how a conviction for reckless driving would not bear a causal nexus to the accident in question.[4]
¶ 14. Unlike their father, Giles's children were neither charged with, nor convicted of, any crime. While they both admitted that they knew it was against the law for them to be riding the ATV on the highway and riding without their helmets on, we find that this does not rise to the level of criminal activity contemplated by the statute. Unlike their father, the children could not have been charged with reckless driving, as they were not driving, nor could the children have been charged with driving with a suspended license. Therefore, the "criminal activity" limitation would not be sufficient to dismiss the children's case at summary judgment.
Reckless Disregard or Intentional Act
¶ 15. The Gileses contend that there was sufficient evidence to produce a genuine issue of material fact regarding whether Brown acted with reckless disregard, either by acting intentionally or acting willfully or wantonly. They argue that the court erred in discounting the affidavit opinion of Wilcher because of her deposition testimony. The Gileses contend that the court improperly "evaluated the proof as though [it] were conducting a bench trial even though all of the evidence was submitted via deposition transcripts and affidavit."
¶ 16. We note at the outset that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge when he is ruling on a motion for summary judgment." Stegall v. WTWV, Inc., 609 So.2d 348, 352-53 (Miss.1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). After reviewing the evidence in this case and the lower court's ruling, we find that there was a genuine issue of material fact regarding whether Brown acted with reckless disregard.
¶ 17. Wilcher swore in her affidavit that she felt that "the Constable was following too close to the 4-wheeler with the two children on the back." Wilcher also swore that she felt that "Brown was at fault because he tried to use his vehicle to bump the 4-wheeler to make it stop. . . . The Constable could clearly see the two children on the back of the 4-wheeler and I do not believe that he should have bumped the . . . 4-wheeler. . . ." Wilcher stated that "Robert Brown was angry after the accident. He was stating that it was Robert Giles [sic] fault for fleeing. Robert Brown did not seem to be concerned about the two children either. . . ." Wilcher further averred:
I do not feel that Robert Giles was going too fast to make his turn and, it is my opinion that the reason the accident occurred is that Robert Brown bumped the back of the 4-wheeler to make it stop or he was driving so close that when Robert Giles slowed down to make the turn, he was too close to avoid hitting them.
Finally, Wilcher stated that it was her opinion that Brown "was too reckless in his manner of stopping Robert Giles."
*617 ¶ 18. Many of Wilcher's statements were called into question during her deposition testimony. For example, Wilcher testified that her belief that Brown was following too closely was simply an "opinion." She testified that she had no facts upon which to base that opinion, and that her opinion was mere speculation. Regarding her assertion that Brown used his vehicle to "bump" the Gileses, Wilcher testified in her deposition that that assertion was also just an "opinion." Wilcher testified that Brown's collision with Giles could have been an "absolute accident." Wilcher testified that her assessment of the situation  that Brown was attempting to use his vehicle to hit Giles and make him stop  was something that someone else had suggested to her. Wilcher testified that the cause of the accident was not "entirely clear" to her. Wilcher also testified that she was not sure how fast the vehicles were going or how far apart they were before the accident. As to her statement that Brown was reckless in his pursuit of Giles, Wilcher testified during her deposition that she did not know what "reckless" means and it was a word that was put on her affidavit by Giles's attorney, who prepared the affidavit. Wilcher testified that she did not know whether it was "speed or distance or a sudden turn by Mr. Giles that caused [the] accident." Wilcher also testified that Giles's right turn was sudden and unexpected.
¶ 19. Many of the concessions made by Wilcher during her deposition by Brown's attorney were rehabilitated somewhat during her examination by Giles's attorney. Wilcher testified that she qualified her assertions regarding the other individuals' intents as speculation because she would had "no way of knowing what anybody was thinking." Wilcher also testified later in her deposition that her belief that Brown attempted to stop Giles by running into the ATV was still her opinion, based on what she had observed. Wilcher testified that she believed that Brown was following too closely to Giles, especially since Giles had two children in plain view on the back of his vehicle. Wilcher explained that, although she could not tell how far apart the vehicles were, she believed whatever distance they were apart was not far enough. Wilcher testified that Brown had enough speed after hitting the ATV to continue on and hit her vehicle. Wilcher testified that there was no reason apparent to her why Brown could not have stopped his vehicle to avoid the accident if he had tried. Wilcher also testified that it was obvious to her that Giles was reducing his speed in order to turn, and testified that the reduction in speed would have been obvious to Brown as well. Wilcher, when asked again about Brown's level of intent, stated "I feel like it was not intentional but he could have stopped I feel like." However, Wilcher also testified that "[Brown] said that it was [Giles's] fault because [Giles] was running from [Brown]. It seemed [Brown] was trying to chase [Giles] basically." When questioned regarding her contact with the Giles's attorney and what they had told her to say, Wilcher testified that the attorney had stressed to her that what would be important was "what I [Wilcher] was saying, what I thought was important." Wilcher also testified that she did not know the Gileses but that she was friends with two of Brown's children.
¶ 20. In its decision granting summary judgment, the court found:
Balancing [Wilcher's] deposition with her affidavit the Court finds her affidavit remarks to be more subjective than objective . . . there is a decided conflict in that she retreats (in her deposition) from her affidavit remark where she originally said that she believed Brown was at fault. . . . In essence, in her deposition she finally declared she `had no *618 idea' as to what Brown was intended [sic] to do. Accordingly, here too the Court gave only limited weight to her affidavit.
With all due respect to the lower court, a summary judgment motion does not place a court in the role of weighing testimony and determining the credibility of witnesses. As explained in Stegall, such determinations are improper for a court to make at the summary judgment stage. Although at times inconsistent, it was still clear from Wilcher's deposition that she believed that the accident was the result of Brown either intentionally hitting Giles or following him so closely that he was unable to stop before hitting him. Furthermore, the testimony of all the parties indicated that this was a low-speed chase, occurring at forty-five miles per hour at the most, and the vehicles had slowed because Giles was preparing to make his turn. Since it is apparent that this was a low-speed chase, it is not clear to this Court why Brown was unable to stop before hitting the ATV.
¶ 21. Wilcher's affidavit and deposition, combined with the other evidence in the case, presented a genuine issue of material fact regarding whether Brown acted with reckless disregard while pursuing Giles. Therefore, summary judgment was improper as to Roberto and Antonio. We affirm the court's finding as to Giles, not because there was no evidence that Brown acted recklessly, but because there was significant evidence that Giles was engaged in criminal activity that had a causal nexus to the accident. However, we reverse and remand the court's judgment as to Roberto and Antonio because there are genuine issues of material fact as to: (1) whether the children were engaged in criminal activity, given the absence of criminal charges or convictions; (2) whether any criminal activity on the part of the children had a "causal nexus" to the accident; and (3) whether Brown acted with reckless disregard in his pursuit of Giles.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART, IN ACCORDANCE WITH THE OPINION ABOVE. COSTS OF THIS APPEAL ARE ASSESSED ONE HALF TO THE APPELLANTS AND ONE HALF TO THE APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] At the time of the accident, Antonio was 14 years old and Roberto was 12 years old.
[2] It is not clear whether Giles and his sons are the individuals that Brown received a call about.
[3] Section 11-46-9(1)(d) grants immunity to a governmental entity and its employees for claims arising out of the entity's or employee's exercise, performance, or failure to exercise or perform a discretionary function or duty, even if the discretion was abused.
[4] Giles contends that he only pled guilty to the reckless driving charge and the other charges because he was coerced to do so by Brown under the threat of additional charges. Such an accusation may go to reversing Giles's criminal convictions, if proved, but until the convictions are reversed, we must treat the convictions as binding. Furthermore, we note that the record contains no evidence of coercion on Brown's part, other than Giles's accusations.