8 So.3d 238 (2009)
Wayne JAMISON, Appellant
v.
Gregory C. BARNES, Appellee.
No. 2007-CA-00765-COA.
Court of Appeals of Mississippi.
November 4, 2008.
Rehearing Denied February 24, 2009.
Certiorari Denied May 7, 2009.
*240 R. Gregg Rogers, Kosciusko, attorney for appellant.
J. Niles McNeel, Louisville, attorney for appellee.
EN BANC.
MYERS, P.J., for the Court.
¶ 1. Wayne Jamison appeals from the Noxubee County Circuit Court's grant of Gregory Barnes's motion for summary judgment on Jamison's complaint for damages resulting from a highway accident. Both Jamison and Barnes filed motions for summary judgment; however, only Barnes's was granted. Jamison argues on appeal that the trial court erred both in granting Barnes's motion and in denying his. Finding error only in the trial court's *241 grant of summary judgment in favor of Barnes, we reverse and remand to the trial court for further proceedings consistent with this opinion.

FACTS
¶ 2. Jamison was seriously injured on November 5, 2005, while operating a tractor on Highway 388 in Noxubee County, Mississippi, when he was struck from behind by Barnes's vehicle. Although the exact time of the accident is disputed, the parties and witnesses agree that the collision occurred in the evening, sometime between 5:10 p.m. and 5:25 p.m. The parties likewise dispute how much daylight remained at the time of the accident.
¶ 3. Jamison, who works on a nearby farm, was returning home after a day's work. He had borrowed a farm tractor owned by his employer to use at his own home, and was traveling eastward at approximately fifteen to eighteen miles per hour. Barnes, on his way to work a night shift as a dredge line operator on the Tombigbee River, was traveling in the same direction at a much higher rate of speed.[1] It is undisputed that Barnes had his lights on, and that Jamison's tractor, although it had a rear-facing triangular reflector, did not have working lights. Barnes claimed that he was unable to see Jamison's tractor until he was too close to stop, and that he attempted to avoid the collision by braking and moving into the left lane. At the same time, however, a vehicle driven by Reverend Tommy Temple was approaching in the westbound lane. To avoid hitting Rev. Temple's truck, Barnes struck the left rear of Jamison's tractor. Barnes's vehicle then collided with a small boat and trailer being pulled behind Rev. Temple's truck. Neither Barnes nor Rev. Temple and his passengers were injured in the accident.
¶ 4. Jamison brought a personal injury suit against Barnes, citing negligence as the proximate cause of his injuries. Following the close of discovery, both parties moved for summary judgment. Jamison's motion asserted that he was entitled to summary judgment as to Barnes's negligence under White v. Miller, 513 So.2d 600 (Miss.1987), which held that when two cars are traveling in the same direction, the primary duty of avoiding collision rests with the second driver, who, in the absence of an emergency or unusual condition, is negligent as a matter of law if he runs into the car ahead. Barnes's motion asserted that Jamison's operation of the tractor on the highway after sunset without working lights, was negligent per se, and that Jamison had failed to produce any evidence of Barnes's negligence.
¶ 5. At the hearing on the dueling motions for summary judgment, the parties introduced Jamison's deposition testimony, as well as affidavits from Barnes, Rev. Temple, and Pearlie Mae Owens, a witness who arrived on the scene several minutes after the accident. In his deposition, Jamison alleged that at the time of the accident, there was sufficient light remaining for Barnes to have avoided the accident. Jamison admitted, however, that had the lights on his tractor been working, he would have had them on at the time of the collision. Barnes maintained that he had been traveling within the speed limit with his lights on, but that it had been too dark to see Barnes's tractor in time to avoid the collision.
¶ 6. Also introduced at the hearing were cell phone records from around the time of *242 the accident, as well as United States Naval Observatory data, purportedly establishing the exact time of the accident in relation to the setting sun. Although the exact time of the accident was disputed, the parties and witnesses agreed that the collision occurred between 5:10 p.m. and 5:25 p.m. On the date of the accident, this time frame falls between sunset and the end of civil twilight, as defined by the United States Naval Observatory.[2] Ultimately, the trial court granted Barnes's motion for summary judgment and denied Jamison's. It is from this decision that Jamison appeals.

STANDARD OF REVIEW
¶ 7. We review a trial court's disposition of a motion for summary judgment de novo. Treasure Bay Corp. v. Ricard, 967 So.2d 1235, 1238(¶ 10) (Miss. 2007). This Court "examines all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc." City of Jackson v. Sutton, 797 So.2d 977, 979(¶ 7) (Miss. 2001) (citations omitted). The moving party has the burden of demonstrating that no genuine issue of material facts exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact. Id. "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." Monsanto Co. v. Hall, 912 So.2d 134, 136(¶ 5) (Miss.2005).

DISCUSSION

I. Whether the trial court erred in granting Barnes's motion for summary judgment.
¶ 8. Barnes's motion for summary judgment encompassed two distinct issues, so we shall address each individually.

A. Whether Jamison produced evidence creating a genuine issue of material fact as to Barnes's negligence.
¶ 9. Jamison argues that he produced sufficient evidence of Barnes's negligence to defeat summary judgment, through his own testimony and the affidavit of Owens, who came upon the accident scene several minutes after the collision. Barnes defends the trial court's grant of summary judgment in the face of this evidence by pointing to admissions elicited from Jamison in his deposition. We shall examine the evidence and admissions in the context of the applicable law.
¶ 10. "[Mississippi] has never adopted a per se rule that the driver of the following car is negligent if he collides with the rear of a preceding vehicle...." White v. Miller, 513 So.2d 600, 601 (Miss.1987). Furthermore:
[T]he driver of a vehicle following along behind another, and not attempting to pass, has a duty encompassing four interrelated functions: he must have his vehicle under proper control, keep a proper look-out ahead, and commensurate therewith drive at a speed and sufficient distance behind the preceding *243 vehicle so that should the preceding vehicle stop suddenly, he can nevertheless stop his vehicle without colliding with the forward vehicle.
Id. However, where there is evidence of an emergency or unusual condition, this operates as a "non-rule" that presents a jury question as to whether the circumstances rise to the level of emergency or abnormal condition. Id. at 602 n. 3.
¶ 11. In addition to the special rule for rear-end collisions propounded in White, our law more generally imposes on a driver an "absolute duty of seeing what he should have seen" and requires drivers to "keep a proper lookout and be[] on alert for vehicles, objects and persons ahead in the highway." Dennis v. Bolden, 606 So.2d 111, 113-14 (Miss.1992). Furthermore, a driver "is also required to have his car under proper control, to be on the alert on the highway, and avoid striking plain objects." Id. at 114. To make a prima facie case of Barnes's negligence, Jamison was required only to show that Barnes should have seen the tractor in time to avoid or mitigate the collision.
¶ 12. Barnes argues that this case presents a scenario recognized by the supreme court as illustrative of an emergency or abnormal conditionthat he was unable to avoid the collision because he suddenly came upon a slow-moving vehicle traveling without lights in darkness. See White, 513 So.2d at 602 n. 3. Barnes asserts in his testimony that he abided by all the rules of the road, had his vehicle under proper control, was keeping a proper lookout, and was not speeding was not contradicted in the record. Jamison, however, argues that there is a genuine issue of fact as to whether or not it was too dark for Barnes to have avoided the collision. Jamison points to his own deposition testimony, where he consistently described the light remaining at the time of the accident as sufficient for Barnes to have avoided the collision:
Q. All right. Now you said that you got off at five and you started out, and so what time do you say the accident happened, would you say, Mr. Jamison?
A. At least it would have been fiveI'd say 5:10 or fifteen. Somewhere likelike that.
Q. All right. At leastat least that time.
A. Yes. At least that time.
Q. And would you say it could have been even later?
A. No, sir. BecauseI mean, good asI can get out there on the roadyou know, and go down there late at evening on a tractor, and I can see until dark, but it wasn't dark. It was comingit wasit was late.
Q. Okay.
A. But you could still see without lights.
Jamison subsequently testified:
Q. Now, you say it was still sort of light.
A. Yes.
Q. Tell me exactly how much light you say there was at the time of day on November the 5th.
A. Closest I cancan say, it gothad to be about forty-five minutes.
Q. Well, would you say it was dusk dark?
A. Well, no, sir. It wasn't dusk dark, but it was pretty close to dusk dark.
And finally:
Q. All right. Let me go back to your description of how dark it was. Just tell me in your own words how dark it was. I don't want to put *244 words in your mouth. You just tell me.
A. Well, II couldn't say exactly how dark it was because, really, I wasn'tI knowed [sic] it wasn't dark that you couldn't see down the whole highway for I could see down the highway without any problem.
Q. Okay. Was the sun starting to go down?
A. Yes, sir. The sun started going down. It did that when I was leavingleaving off my job.
Jamison also cites the affidavit of Owens, who swore that she came upon the scene approximately five minutes after the accident and stated, "At the time of the accident, you could still see where you were going without the need for headlights. We were able to see the accident scene well before we got there." Barnes argues that this evidence is contradicted by Jamison's own deposition testimony. In particular, he points to two exchanges, which we shall examine in detail.
¶ 13. First, Barnes cites to an exchange from Jamison's deposition where he asserts that Jamison failed to attribute any negligent act to Barnes. Jamison testified that he was not "able to say" that Barnes was speeding, not paying attention to what was in front of him, or driving recklessly. When pressed to explain why Barnes was responsible for the accident, Jamison stated that he could not answer and that he did not understand the question.
¶ 14. From our review of the record, this argument is without merit. Jamison was struck from behind, and he explained that he first saw Barnes's vehicle only a few moments before the collision. Jamison was not in a position to observe Barnes's driving, and at any rate, he was not required to personally witness a negligent act of Barnes. Our law allows Jamison to prove Barnes's negligence through circumstantial evidencethat the conditions were such that Barnes should have seen Jamison's tractor in time to avoid the collision. While we might think of this as intuitive, Jamison is a layman who has worked as a farmhand for more than fifty years. His claim does not fail because he was unable to articulate a legal theory at his deposition.
¶ 15. Second, Barnes asserts that Jamison's deposition was internally inconsistent because Jamison admitted that, had the lights on his tractor been working, he would have had them on at the time of the collision. Barnes argues that this contradiction precludes Jamison from now arguing that the remaining daylight was sufficient for Barnes to have avoided or mitigated the accident.
¶ 16. We do not find the two statements to be contradictory, as one need not wait until it is too dark to see to turn on one's lights. See Miss.Code Ann. § 63-7-11 (Rev.2004) (lights generally required "when there is not sufficient light to render clearly discernible any person on the highway at a distance of five hundred feed ahead" (emphasis added)). Our law also generally requires a driver to operate his vehicle with lights on from the time of "sunset," even though "complete darkness" does not occur until some time after the end of "civil twilight," a span of almost half an hour on the day of the accident. See id. It is undisputed that the accident occurred some time after "sunset" but before "complete darkness." Furthermore, lights may be used by cautious drivers even when not required by law, and the threshold for when this is prudent is a matter of personal judgment and opinion, rather than concrete fact. Because lights are often used or required when visibility is nonetheless sufficient to avoid a collision like the one in the instant case, Jamison's admission that he would have had his lights on, had they *245 been working, is not an admission that it was too dark for Barnes to have seen the tractor in time to avoid the accident.
¶ 17. Even if, as the dissent argues, Jamison's deposition testimony were internally inconsistent on the sufficiency of light remaining, the trial court would nonetheless have erred in granting summary judgment to Barnes. Contradictory statements by a witness go to the weight and credibility of that witnesses's testimony, not its sufficiency, and a summary judgment motion does not place the trial court in the role of weighing testimony and determining the credibility of witnesses. Giles v. Brown, 962 So.2d 612, 617-18(¶ 20) (Miss.Ct.App.2006) (citing Stegall v. WTWV, Inc., 609 So.2d 348, 352-53 (Miss. 1992)). The dissent is correct to point out, however, that this rule is not without exceptions. One of those exceptions prevents a party from defeating summary judgment with an affidavit of a witness that contradicts facts asserted in that witness's prior deposition testimony, unless the affidavit explains the discrepancy. Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss.1989). The instant case, however, is distinguishable, and the exception discussed in Foldes does not apply to either Owens's affidavit or Jamison's deposition testimony.
¶ 18. As to Owens's affidavit, Owens had not been previously deposed. The dissent argues that her affidavit should not be considered because it conflicts, not with her own prior testimony, but with Jamison's. The exception as stated by our supreme court simply does not include an affidavit that is contradicted by the deposition of a different witness. Additionally, Owens's affidavit and Jamison's deposition testimony do not contradict each other because they do not speak to the same facts. Jamison did not testify that his tractor could not have been seen by other drivers without its lights on; he said the lights would have made it easier for other drivers to see him. Owens, however, offered that there was still sufficient light to see without the use of lights.
¶ 19. As to Jamison's own testimony, as we have explained above, it is not inconsistent. Even if we were to assume that it was inconsistent, the Foldes exception nonetheless does not apply to internal inconsistencies in one deposition, but applies only to cases where a deposition is later contradicted by an affidavit intended to defeat summary judgment. In fact, one of the Fifth Circuit cases cited by the supreme court in adopting this rule embraced the same distinction. See Kennett-Murray Corp. v. Bone, 622 F.2d 887, 894-95 (5th Cir.1980) ("Thus, the alleged inconsistency created by the affidavit existed within the deposition itself. Accordingly, the issue ... was appropriately raised by the deposition even without consideration of the affidavit." (footnote omitted)).
¶ 20. Jamison's deposition testimony and Owens's affidavit both describe the daylight remaining at the time of the accident as sufficient for Barnes to have seen Jamison's tractor in time to avoid the collision. Jamison also testified that the road was straight and that Barnes's view was unobstructed, and it is uncontroverted that Jamison's tractor was equipped with a large, reflective triangle facing to the rear and that Barnes was operating his vehicle with its headlights on. Giving Jamison the benefit of all reasonable inferences from these facts, there is a genuine issue of material fact as to whether Barnes was negligent because he should have seen the tractor in time to avoid or mitigate the accident. The trial court erred in granting summary judgment to Barnes on this issue.

*246 B. Whether Jamison's operation of the tractor was negligent per se.

¶ 21. Barnes's summary judgment motion also alleged that Jamison was negligent per se for violating two provisions of the Uniform Highway Traffic Regulation Law. First, we would note that even if Jamison were negligent per se, it would not bar his recovery if he could show that Barnes was also negligent, under the familiar doctrine of comparative negligence. See Coho Res., Inc. v. Chapman, 913 So.2d 899, 911(¶ 36) (Miss.2005). Even if comparative negligence were taken off the table, Mississippi Code Annotated section 63-7-81 (Rev.2004) further provides that, "Nothing in this chapter shall be so construed as to curtail or abridge the right of any person to prosecute a civil suit for damages by reason of injuries to person or property resulting from the negligent use of the highways by any motor vehicle, or its owner...." Had Jamison been negligent per se under this chapter, it would not preclude his recovery as long as he could show Barnes was also negligent.
¶ 22. The first statutory provision Jamison is said to have violated is Mississippi Code Annotated section 63-7-11 (Rev. 2004), which requires that most vehicles operating on the highways after sunset use headlights and taillights, and section 63-7-13(3) (Rev.2004), which requires that "[e]very motor vehicle, trailer, semitrailer, pole trailer and any other vehicle which is being drawn in a train of vehicles shall be equipped with at least one ... rear lamp...." These requirements, however, did not apply to Jamison's tractor in the instant case, as Mississippi Code Annotated section 63-7-9 (Rev.2004) provides that, "Except as may otherwise be provided in this chapter, the provisions of this chapter with respect to equipment on vehicles shall not apply to implements of husbandry, road machinery, road rollers, or farm tractors."
¶ 23. The record shows that the vehicle Jamison was operating at the time of the collision, an International Harvester model 986 tractor employed for agricultural purposes, would qualify as either an "implement of husbandry" or a "farm tractor," and is thus generally exempted from the equipment requirements of the chapter. This exemption extends to the lighting requirements of sections 63-7-11 and 63-7-13(3). See Williams ex rel. Dixon v. Thude, 180 Ariz. 531, 885 P.2d 1096, 1099-1100 (Ct.App.1994) (implements of husbandry exempted from lighting requirements); Se. Liquid Fertilizer Co. v. Mock, 92 Ga.App. 270, 88 S.E.2d 531, 532 (Ct. App.1955) (farm tractors exempted from lighting requirements unless the tractor falls under a Georgia-specific addition to the uniform act, which required tractors originally equipped with lights to use them); Thomas v. Johnson, 181 So.2d 487, 488-89 (La.Ct.App.1965) (implements of husbandry exempted from equipment requirements); Bernhard v. Lincoln County, 150 Mont. 557, 437 P.2d 377, 379 (1968) (road machinery exempted from lighting requirements); Griffin Grocery Co. v. Logan, 309 P.2d 1074, 1077 (Okla.1957) (road machinery exempted from lighting requirements); Cook v. Caterpillar, Inc., 849 S.W.2d 434, 438-439 (Tex.App.1993) (road machinery exempted from turn signal requirement); Western Packing Co. v. Visser, 11 Wash.App. 149, 521 P.2d 939, 942-43 (1974) (implements of husbandry exempted from lighting requirements).[3]
*247 ¶ 24. The second statutory provision Jamison is said to have violated prohibits the non-emergency operation of certain slow-moving vehicles after sunset, when those vehicles are equipped with reflective tape in lieu of a standard triangular slow-moving-vehicle emblem. See Miss.Code Ann. § 63-7-91 (Rev.2004) ("Except in cases of emergency, vehicles subject to the provisions of this section that display the reflectorized tape shall not be operated upon any highway ... from sunset to sunrise." (emphasis added)). It is clear from the record that Jamison's tractor was equipped with a triangular reflector, not reflectorized tape, and thus would not be prohibited from operating on the highway after sunset even if this section applied. We need not address whether farm tractors are subject to the specific equipment requirements for slow-moving vehicles under section 63-7-91.
¶ 25. While a jury might find Jamison's operation of the tractor under these circumstances to be negligent, the trial court erred in finding it to be negligent per se.

II. Whether the trial court erred in denying Jamison's motion for summary judgment.
¶ 26. Jamison also argues that the trial court erred in denying his own motion for summary judgment. We find this argument to be without merit. For the reasons discussed above, Barnes's affidavit, which maintained that it was too dark for him to have seen Jamison's unlit tractor in time to avoid the collision, was sufficient to create a genuine issue of material fact as to Barnes's negligence under the circumstances. Because the evidence is conflicting, the trial court did not err in refusing to find Barnes negligent as a matter of law.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF NOXUBEE COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLTON, J.
BARNES, J., Dissenting:
¶ 28. In order to survive summary judgment, "[t]he non-moving party's claim must be supported by more than a mere scintilla of colorable evidence; it must be evidence upon which a fair-minded jury could return a favorable verdict." Luvene v. Waldrup, 903 So.2d 745, 748(¶ 10) (Miss. 2005) (quoting Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1213-14 (Miss.1996)). In a negligence action, the plaintiff generally has the burden of proof on the issue of causation, and must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough." Herrington v. Leaf River Forest Prods., Inc., 733 So.2d 774, 777(¶ 10) (Miss. 1999). After studying the record, and analyzing the evidence in the light most favorable to Jamison, I find no such evidence and, therefore, dissent.
¶ 29. On November 5, 2005, between approximately 5:10 p.m. and 5:25 p.m., Jamison, Barnes, and Rev. Tommy Temple were involved in a motor vehicle accident on Highway 388 in Noxubee County, Mississippi. Jamison, who works on a nearby farm, was driving his employer's tractor in an eastward direction. Barnes, who was also driving in an eastward direction, claimed he was abiding by all of the rules of the road, including having his lights on, *248 when he came upon Jamison's tractor without notice. The tractor's lights were not on. It did, however, have a large reflective triangle on the back. Barnes attempted to take evasive action to prevent hitting the tractor by braking and swerving to the left, but he was unsuccessful. Barnes hit the tractor from the rear. Rev. Temple was driving his pickup truck in a westerly direction, pulling a bass boat. After Barnes collided with Jamison, Barnes's vehicle entered Rev. Temple's lane and struck his bass boat. In his affidavit, Rev. Temple stated it was "definitely dark enough" that vehicle lights were needed. According to the United States Naval Observatory Astronomical data, sunset in Noxubee County for November 5, 2005, began at 4:59 p.m.[4]
¶ 30. The evidence is thus uncontradicted that Barnes hit the back of Jamison's unlit, slow-moving tractor. The three witnesses to the accident, Jamison, Barnes, and Rev. Temple, attribute no fault to Barnes. In his deposition, Jamison himself admitted that Barnes was not speeding or driving erratically. Furthermore, Jamison admits that it was dark enough that if the tractor's headlights had been working, he would have had them on.
Q. Tell me exactly how much light you say there was at that time of day on November the 5th.
A. Closest I can ... say, it gothad to be about forty-five minutes.
Q. Well, would you say it was dusk dark?
A. Well, no, sir. It wasn't dusk dark, but it was pretty close to dusk dark.
Q. Other vehicles on the highway had their lights on. Is that right?
A. Yes, sir.
Q. You would have had your lights on, but they didn't work?
A. Yes, sir. Well, if I ... had had some, I could have ... had them on, but they didn't work, like you say.
Q. If they had been working, would you have probably had your lights on?
A. Yes, sir.
Q. Why would you have had your lights on if they'd been working?
A. Well, ... you watch for the next person coming and meeting you, and you let them know that you got your lights on-some behind you, some in front of you.
Q. Okay. Do you think it was dark enough or sunset enough or dusk enough that you needed your lights... if they had been operating?
A. Yes, sir.
Q. But you ... couldn't turn them on because they ... didn't work?
A. Yes, sir.
Q. But do you think that ... you needed them on since it was close enough to dusk, if they had been operating?
A. Uhyes. If I'd had them, I could have ... had them on.
Q. And ... would you have had them on?
A. Yes, sir.
Jamison also noted Barnes's headlights were on. In Barnes's affidavit, he recounts the accident as follows:
My headlights were on as it was almost dark. Suddenly, I saw a slow moving tractor in my lane traveling in the same direction. There were no lights on the tractor and I was almost upon it before I *249 noticed the tractor.... I was obeying all rules of the road, was not speeding, and was attentive to the road in front of me.
Rev. Temple, whose vehicle was pulling a bass boat which Barnes struck trying to evade Jamison's tractor, stated in his affidavit that:
I was not able to estimate the speed for... [Barnes's] vehicle but I have no reason to believe the vehicle approaching behind the tractor was speeding.... I did not observe any improper driving on the vehicle approaching behind the tractor.... In my opinion it was too dark for the tractor to be on the highway without lights operating.
Moreover, the official accident report states there was no apparent improper driving by Barnes. In the absence of any proof of negligence on Barnes's part, there is no factual dispute that needs to be presented to a jury.
¶ 31. The majority notes that Barnes did have certain duties specific to rear-end collisions as articulated in White v. Miller, 513 So.2d 600, 601 (Miss.1987). The defendant has a duty to (1) keep his vehicle under proper control, (2) keep a proper look-out ahead, and (3) drive at a speed with sufficient distance behind the preceding vehicle so that should the preceding vehicle stop suddenly, he can nevertheless stop his vehicle without colliding with the forward vehicle.[5] The Mississippi Supreme Court noted in White that it had "never adopted a per se rule that the driver of [a] following car is negligent if he collides with the rear of a preceding vehicle...." Id. The White court cited Miller v. Cody, 41 Wash.2d 775, 252 P.2d 303 (1953) for the rule that "[w]here two cars are traveling in the same direction, the primary duty of avoiding a collision rests with the following driver and in the absence of an emergency or unusual conditions" he is negligent as a matter of law if he runs into the car ahead. The White court referred to this proposition as a "non-rule" that allows for case-by-case decisions. Id. at 602 n. 3. An emergency situation expressly recognized in White, and similar to the instant facts, is where the defendant unexpectedly encounters a slow-moving vehicle traveling without lights at night. Id. (citing Szarapski v. Joaquin, 139 Cal.App.2d 27, 292 P.2d 959, 962 (1956)).[6]
¶ 32. I find no evidence of negligence on the part of Barnes; his uncontradicted affidavit reflects that he maintained his duty of care pursuant to the factors outlined in White. The record indicates Barnes was abiding by the rules of the road, keeping his vehicle in control, maintaining a proper lookout, not speeding, and *250 not following the tractor in close proximity, when he suddenly came upon it. Also, the fact that the tractor did not have its lights on could present an abnormal or emergency condition, as articulated in White, which further precludes Barnes's fault. In White, the Mississippi Supreme Court stated that "the jury can decide whether or not the circumstances rise to the level of emergency or abnormal condition." Id. at 602 n. 3. However, in this case, where the only evidence of negligence is on the part of Jamison, I am unable to find that a jury issue has been created.
¶ 33. The majority states that "Jamison offered his testimony and that of one other witness asserting that there was still sufficient daylight left at the time of the accident for Barnes to have seen the tractor in time to avoid colliding with it." To the contrary, Jamison admitted that it was dark enough to have needed lights; his lights were just inoperable. The only proof Jamison offered in support of this contention that there was sufficient daylight for Barnes to have avoided hitting him is the affidavit of Pearlie Mae Owens, who claimed that she came upon the scene of the accident less than five minutes after it took place. Owens stated, "you could still see where you were going without the need for headlights. We were able to see the accident scene well before we got there." Owens's affidavit, however, conflicts with all of the other evidence about the necessity for vehicular lights at the time of the accident. Jamison admits in his own deposition that it was dark enough to have had the tractor's lights on if they had been working. Moreover, when there is a discrepancy between the facts of an affidavit and a previous deposition of the same witness, "the affidavit must explain such discrepancy." Foldes v. Hancock Bank, 554 So.2d 319, 321 (Miss.1989) (citing Miller v. A.H. Robins, Inc., 766 F.2d 1102, 1104 (7th Cir.1985)). I find this rule analogous to the situation at bar, even though this case deals with two different people. In the instant case, Jamison would be precluded from presenting his own affidavit contradicting his admission that it was dark enough for his tractor's lights to have been on. He attempts to create a genuine issue of material fact, contradicting his own testimony, by presenting the affidavit of a person who was not present at the time the accident occurred. I find that Owen's affidavit is insufficient to overcome Jamison's admission. Her affidavit, which fails to identify any negligence on the part of Barnes, is insufficient to create a genuine issue of material fact that he was responsible for the accident.
¶ 34. Therefore, I must dissent, as I find that Jamison has not met his burden of proof to establish the existence of a genuine issue of material fact that more likely than not the conduct of Barnes was the cause of the accident; thus, I would affirm the circuit court's grant of summary judgment in favor of Barnes.
CARLTON, J., JOINS THIS SEPARATE OPINION.
NOTES
[1] Barnes's affidavit stated that he was traveling at or below the fifty-five-mile-per-hour speed limit. Rev. Temple's affidavit corroborated this, and Jamison could not say Barnes was speeding.
[2] "Sunset" is defined as "conventionally refer[ring] to the times when the upper edge of the disk of the Sun is on the horizon." "Civil twilight" ends in the evening when the center of the sun is geometrically six degrees below the horizon. Civil twilight is "the limit at which twilight illumination is sufficient, under good weather conditions, for terrestrial objects to be clearly distinguished," although "complete darkness" does not occur until some time after the end of civil twilight. United States Naval Observatory, http://aa.usno.navy.mil/faq/docs/RST defs.php (last visited September 11, 2008). According to data from the U.S. Naval Observatory, on November 5, 2005, sunset began in Noxubee County at 4:59 p.m. and civil twilight ended at 5:25 p.m.
[3] Additionally, "This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." Miss.Code Ann. § 63-7-3 (Rev.2004).
[4] The U.S. Naval Observatory conventionally defines "sunset" as the time when the upper edge of the Sun's disk is on the horizon. United States Naval Observatory, http://aa.usno.navy.mil/faq/docs/RST_defs.php#top (last visited October 9, 2008).
[5] I note that White is factually dissimilar from the case at bar in that White deals with the driver of a vehicle following behind another when the vehicle in front suddenly stopped. Here, the evidence shows Barnes was not necessarily "following" Jamison's tractor, but suddenly came upon it. Nor did the tractor suddenly stop.
[6] I find the issue of whether Jamison was "negligent per se" to be a "red herring"; whether or not Jamison's conduct violated motor vehicle statutes creates no genuine issue of material fact as to whether Barnes was negligent. The majority claims the trial court based its grant of summary judgment on Jamison's operation of a tractor on the highway during the prohibited hours of use; however, we find no such specification in the order; it merely stated there were no genuine issues of material fact present. While the Mississippi Legislature has not seen fit to make it a statutory violation for a slow-moving tractor to travel on Mississippi roadways after sunset without headlights or taillights functioning, as it has with the majority of vehicles, that does not mean that the conduct was not negligent. See Miss.Code Ann. § 63-7-99 (Rev.2004) (compliance with slow-moving vehicle emblem does not create prima facie case or presumption of "reasonable and ordinary care").