Brown-Miller Company *v.* Howell, et al.

No. 39638 May 2, 1955 79 So. 2d 818

*Dudley W. Conner, R. L. Calhoun,* Hattiesburg; *Watkins & Eager,* Jackson, for appellant.

*Dent & Dent,* Collins; *Barnett, Jones & Montgomery,* Jackson; *L. D. Pittman,* Raleigh, for appellees.

Lee, J.

G. C. Howell, Sr., and others, the father, mother and brothers and sisters of Oree A. Howell, deceased, sued Brown-Miller Company, a Corporation, and Tom Walker to recover damages for the death of their son and brother. Simply stated, the declaration charged that the decedent, in a truck, was driving south on Highway 49 in the west lane of travel; that Walker, in another truck, ahead, was also driving in the same direction and endeavored suddenly to stop on the right shoulder of the highway; that Otis Kates, driving a truck of Brown-Miller Company, was traveling north and was out of his proper lane of travel; that because the Kates truck was

out of its proper lane of travel, the Howell truck was caught between it and the Walker truck and was struck with such great violence by the Kates truck that Howell was killed; and that the sudden negligent stopping of the Walker truck, and the negligent driving of the Kates truck in the west lane of travel proximately and concurrently caused and contributed to the injury and death of the decedent.

On petition of Brown-Miller Company, the cause was removed to the federal court, but subsequently, on the motion of plaintiffs, the cause was remanded to the state court.

The defendants, in their separate answers, denied in detail the material allegations of the declaration as to them, and averred that they were guilty of no negligence proximately causing or contributing to the death.

Upon submission of the cause to the jury, it found for the plaintiffs, as against Brown-Miller Company, and assessed the damages at $30,000; and by a separate verdict, it found for the defendant Tom Walker. Brown-Miller Company appealed.

Howell and Walker lived at Mize, Mississippi. They were driving trucks for Deaton Truck Lines of Birmingham, Alabama. They had picked up loads at Birmingham and had come as far as Mize on their way to make deliveries in New Orleans, Louisiana. Walker's truck was loaded with angle iron, and Howell's with tin plate. The empty trucks each weighed about 18,000 pounds and their loads approximated 28,000 pounds. The trailers were open and 8 feet wide. The over-all length of the tractor and trailer, in each instance, was about 42 feet.

Brown-Miller Company operated a pickle plant at Wiggins, Mississippi. Otis Kates and Morris Williams drove tractor-trailer trucks for the Company in order to make deliveries of its products. The vehicles, empty, each weighed 19,600, and carried loads of about 32,000 pounds. They had 14 wheels. The over-all length was

42 or 43 feet; and the trailers were covered and 8 feet wide.

Early in the morning of April 26, 1954, the two Brown-Miller trucks operated by Williams and Kates, in that order, left Wiggins and were proceeding north on highway 49 in order to make deliveries of pickles in Memphis, Tennessee. Likewise the two open trucks, operated by Walker and Howell, in that order, left Mize and were proceeding to their destination in New Orleans. From Mt. Olive, they traveled south on Highway 49. There was a dense fog. In Covington County, a short distance north of the Forrest County line, the Kates and Howell trucks collided and both of the drivers were killed. This occurred around 4 A. M.

The pavement, at the place of the collision, was 20 feet wide, with 7 foot shoulders on each side. The road was level and straight for a considerable distance in both directions. Following the collision, the Walker truck, headed south, was completely off of the pavement on the west side. The Kates truck, headed north, was completely off the pavement on the east side. The Howell truck, headed south, was on the pavement and alongside the Walker truck, but about 10 feet farther south. The front end of the Kates truck was 12 to 15 feet farther north than the rear end of the Howell truck. There were no skid-marks on the pavement. There was no damage to the bumper, grill, or front end of the Howell truck. The impact upon it was about the door of the cab on the driver's side and backward. The Kates truck was smashed from about the center on the front and along the left side, with the bumper and fender somewhat rolled back and the cab demolished. The gas saddle tank of the Howell truck on the driver's side, between the cab and the trailer, was demolished. Gas, evidently from this tank, was the fuel for the fire which burned almost entirely in the west lane with additional damage to the Howell truck. The only damage to the Walker truck was from fire. Photographs verified the oral evidence of

witnesses as to these physical facts, except the location of the Howell truck, which had been moved off of the highway before the pictures were taken.

Six witnesses, W. C. Jones, Prentiss Walker, John Atwood, Mrs. Darlene Calhoun, Ray Howell and George Howell, Sr., testified that following the wreck, the Howell truck was entirely west of the center line; and Tom Walker was positive that the tractor part was west of the center line, but he was not sure as to the remaining part because he did not notice it.

J. C. Puckett, a patrolman, and Jake Edwards testified that the rear part of the Howell truck was barely over into the east lane about 1 foot, while J. F. Guthrie said that it extended about 18 inches, and W. G. Strahan, that the rear wheels on that side were in the east lane.

 █ Tom Walker testified that, as he was driving south in the dense fog, he saw a couple of lights in his lane of travel, and that, as quickly as he could safely do so, he pulled off on the side of the road and onto the shoulder. Shortly after stopping, he heard a noise, then an explosion, and in a second's time saw fire to his left. At that juncture, Howell's truck stopped with the saddle tank on the right side about opposite the left front wheel of Walker's truck, and thus about 10 or 12 feet ahead. He did not know what became of the lights which he had seen in front of him, that is, whether they came on north, or stopped, or turned off. On cross-examination, he was asked if he did not tell Patrolmen Puckett and Rutland that his reason for turning off was that he had overtaken a bob truck, that is a three-quarter ton truck in the fog. He denied this, though stating that he saw something that looked like a bob truck, but that he saw only the lights and did not know what they were. By way of impeachment, Puckett testified that Walker said that he was overtaking a bob truck, going in the same direction; but Rutland, who heard the same statement, while agreeing that Walker was talking about overtaking a bob truck, testified that Walker did not say in which

direction the bob truck was traveling. The patrolmen were never able to find this so-called bob truck. The only other evidence about a bob truck on this occasion was by Morris Williams, the driver of the other Brown-Miller truck, who testified that after he had driven about 5 miles from the place where he had last seen the Kates truck, he met and passed a bob truck and that a short time later he met and passed two trucks with "Deaton" written on all sides. This statement, in view of the heavy fog, and the inability of the witness to say that he had passed any other vehicle between that point and the Town of Collins, when it was clear that he did actually pass other vehicles, no doubt taxed the jury's credulity. Of course, the credibility of the witnesses was for the jury.

From the physical facts and circumstances, which have been heretofore detailed, in combination with the testimony of Walker, the jury was warranted in finding that Walker turned off of the road in order to avoid a motor vehicle, which, according to its lights, was traveling in the west lane of traffic; that this vehicle, after Walker got his truck out of the way, came on forward and collided with the Howell truck at a time when that truck was wholly west of the center line; and that the cause of the collision was that this vehicle which turned out to be the Kates truck, was partly in the west lane of the highway. According to Walker's version, these were the only lights which he saw at that time. As heavy as the fog was on that occasion, it seems unlikely that he would have observed the small tail lights of a bob truck, traveling in the same direction and which he was overtaking, and not see the strong headlights of the big truck, which was actually approaching him.

 Direct evidence is not absolutely essential to prove negligence. It may be shown by circumstantial evidence, if sufficient to "place it within the field of legitimate inference." 38 Am. Jur., Negligence, Section 333, page 1032; Palmer v. Clarksdale Hospital, 206

Miss. 680, 40 So. 2d 582; Johnston v. Canton Flying Service, 209 Miss. 226, 46 So. 2d 533; Farish v. Canton Flying Service, 214 Miss. 370, 58 So. 2d 915; So. Pine Electric Power Assn. v. Denson, 214 Miss. 397, 57 So. 2d 859.

Since the Court, in passing on the defendant's requested peremptory instruction, was required to treat the evidence of the plaintiffs as proving every fact favorable to their case, which was established either directly or by reasonable inference, it is clear that the court was not in error in refusing the instruction. This principle is so elemental as to require no citation of authority.

The verdict was founded on substantial evidence. Hence it was not subject to be set aside on the ground that it was against the great weight of the evidence.

It was the plaintiffs' burden, and the instructions required them, to prove from a preponderance of the evidence that the defendant negligently operated its truck in the west lane of the highway, and that such negligence proximately caused or contributed to the injury and death of the decedent. The plaintiffs' instruction on comparative negligence was proper, and was not misleading in view of the various defense instructions, which authorized the jury to find that the deceased, in several particulars, was guilty of contributory negligence.

Appellant contends, too, that the Court erred in overruling its motion for a continuance.

In the affidavit, it was alleged that Tom Walker, in the presence of Mr. and Mrs. L. W. Klarr, when he was removing the injured Howell from the burning truck, said that "the cause of said accident was that Oree Howell was trying to pass him, (Walker) and that he ought not to have done it." It was shown that Mrs. Klarr was in the hospital. Counsel for the defendant called M. M. Roberts, of counsel for Tom Walker, who testified that Klarr had told him and others that he, Klarr, did not say what was stated in the motion, and that he had never

said that Walker had stated anything to indicate that the Howell truck was in any way to blame. ██ ██ Besides, one of the attorneys for the plaintiffs, testifying in opposition to the motion, said that a young man in Klarr's yard, informed him that morning that Klarr was plowing in the field several hundred yards away. No attachment was requested for this witness. Besides, on the motion for a new trial, neither of the Klarrs testified, nor were their affidavits produced, nor was it shown that these requirements, or one of them, could not be complied with. Consequently the appellant is not in position to complain of error in this respect. Lamar v. State, 63 Miss. 265; Ware v. State, 133 Miss. 837, 98 So. 229; Ogden v. State, 174 Miss. 119, 164 So. 6; Bone v. State, 207 Miss. 20, 41 So. 2d 347. See also Section 1520, Code of 1942.

██ ██ The appellant also complains of error in the use, over its objection, of two charts by one of the attorneys for the plaintiffs in his closing argument to the jury. One of the charts undertook to itemize the value of the loss of companionship to the plaintiffs during the decedent's and their reasonable expectancies, respectively, the funeral bill, contributions to the father and mother during their reasonable expectancies, with the addition of one-third for the decreased value of the dollar. This chart was obviously utilized by counsel in an effort to convince the jury of a compensatory amount which it would be warranted in awarding, if it found for the plaintiffs. The case of 4-County Electric Power Assn. v. Clardy, (Miss.) 73 So. 2d 144, has settled this point in part adversely to the appellant's contention. The other chart contained alleged prices for certain staple articles of merchandise as between 1935 and 1954, and obviously its purpose was to show the decreased value of the dollar.

In Laurel Light & Ry. Co. v. Jones, 137 Miss. 143, 102 So. 1, (1924), it was recognized that the purchasing power

of the dollar at the time of the injury is an element that may be considered in arriving at the number of such dollars necessary to compensate for the injury.

In Cotton Mills Products Co. v. Oliver, 153 Miss. 362, 121 So. 111, (1929), the Court said that it knew that the purchasing power of a dollar, since World War I, had been reduced about 50% of its prior value. As to the Court's observations in respect to the decrease of the value of the dollar in more recent years see St. Louis-San Francisco Ry. Co. v. Dyson, 207 Miss. 639, 43 So. 2d 95; Gordon v. Lee, 208 Miss. 21, 43 So. 2d 665; Gulf Transport Co. v. Allen, 209 Miss. 206, 46 So. 2d 436.

██ ██ In 88 C. J. S., Trial, Section 181b, pages 355-6, it is said: "Counsel may properly argue and comment on self-evident facts and matters of common knowledge outside the record unless harm might fairly be inferred to follow therefrom; * * * ."

In Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817, it was recognized that counsel, in his argument, may refer to matters which are not in the record, if they are of such common knowledge that the court would take judicial notice of the same, for it was there said, as to such right of counsel, "He may give wing to his wit and play to his imagination so long as he does not imagine fact not in evidence, which the court does not take judicial knowledge of, * * * ."

██ ██ If counsel had said to the jury that they knew, as a matter of common knowledge, the difference in the prices of the articles in question as between 1935 and 1954, just as was indicated on the chart, the argument would not have been improper. ██ ██ The greater part of man's information and knowledge is acquired through the eye. Consequently it was not improper, about a matter of such common knowledge, namely, the decrease in the value of the dollar, for the attorney to emphasize this contention by putting his understanding of the comparative prices on the chart so that such decrease could be visualized by the jury.

No reversible error appears in the record, and the cause is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.