# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00888-COA

**NED B. CLARK, JR. AND EDNA MARIE CLARK**                   **APPELLANTS**

**v.**

**CHARLES MCCORKLE**                                               **APPELLEE**

DATE OF JUDGMENT:               05/04/2016
TRIAL JUDGE:                    HON. JOSEPH H. LOPER JR.
COURT FROM WHICH APPEALED:      CARROLL COUNTY CIRCUIT COURT,
                                SECOND JUDICIAL DISTRICT
ATTORNEY FOR APPELLANTS:        GREGORY MALTA
ATTORNEYS FOR APPELLEE:         JACOB MICHAEL JENKINS
                                A. LEE ABRAHAM JR.
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                    REVERSED AND REMANDED - 11/28/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CARLTON, J., FOR THE COURT:**

¶1. On May 4, 2016, the Carroll County Circuit Court granted Charles McCorkle's motion for summary judgment on Ned and Edna Clark's (the Clarks) complaint for damages resulting from a highway accident. In response to the grant of summary judgment, the Clarks filed a motion for rehearing on the matter, which the trial court denied. The Clarks now appeal.

¶2. Upon review of the record and applicable law, we find that questions of material fact exist, thus precluding the grant of summary judgment. As a result, we reverse and remand the trial court's grant of summary judgment.

**FACTS**

¶3.     On the morning of Tuesday, October 16, 2012, at approximately 7:24 a.m., Ned was driving his 1991 Ford Ranger southbound on Mississippi Highway 35 in Carroll County, Mississippi, when he rear-ended McCorkle, who was driving a 1985 John Deere farm tractor that was pulling a flatbed "cotton" trailer.[1]   As a result of the accident, Ned suffered five broken ribs, a punctured lung, and his left arm was amputated.

¶4.     On November 21, 2014, the Clarks filed a complaint against McCorkle asserting three causes of action:  that McCorkle was (1) negligent, (2) grossly negligent, and (3) negligent per se because he was operating a tractor and trailer with inadequate lighting in a low-visibility area.

¶5.     After conducting discovery, McCorkle moved for summary judgment.  The trial court granted summary judgment after finding that no genuine issues of material fact existed concerning McCorkle's negligence.  The trial court held that "absent an emergency or unusual condition, it was [Ned] who had the primary duty to avoid hitting McCorkle's trailer."  In addition, the trial court concluded that the Clarks' expert witness's opinion was "not based on sufficient evidence, and [could not] establish a genuine issue of material fact."

¶6.     On May 15, 2016, the Clarks moved for rehearing.  The trial court denied the motion for rehearing.

¶7.     The Clarks now appeal, asserting the following assignments of error:  (1) the trial court erred in granting summary judgment, (2) the trial court abused its discretion in

_____

[1] Both the farm tractor and cotton trailer were equipped with a reflector triangle placard.

2

dismissing the opinion and testimony of Jason Walton, the Clarks' expert witness, and (3) the trial court erred in failing to grant the Clarks their constitutional right to a trial by jury.

## STANDARD OF REVIEW

¶8.    We review a trial court's grant of summary judgment de novo, with the evidence viewed in the light most favorable to the nonmoving party. *Karpinsky v. Am. Nat'l Ins*., 109 So. 3d 84, 88 (¶9) (Miss. 2013).  Upon review, this Court examines "all the evidentiary matters before [it], including admissions in pleadings, answers to interrogatories, depositions, and affidavits." *Albert v. Scott's Truck Plaza Inc*., 978 So. 2d 1264,1266 (¶5) (Miss. 2008) (citations omitted).  "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party's favor." *Stringer v. Trapp*, 30 So. 3d 339, 341 (¶9) (Miss. 2010).

## DISCUSSION

¶9.    The Clarks argue that the trial court erred in granting summary judgment in favor of McCorkle.  The Clarks assert that they presented sufficient evidence to prove McCorkle's negligence and defeat summary judgment, including: (1) Ned's sworn affidavit filed with his complaint, (2) Ned's deposition, (3) McCorkle's deposition, and (4) the deposition and report of expert witness Walton, an accident-reconstruction specialist.  The Clarks maintain that the evidence submitted shows that McCorkle breached his duty of care by negligently operating an oversized slow-moving vehicle during foggy and low-light conditions without making the flatbed trailer connected to his tractor properly visible to other drivers on the highway.  The Clarks also claim that the trial court failed to provide them with an opportunity for surrebuttal

3

to refute McCorkle's mischaracterization of their pleadings, specifically regarding whether a dispute of a material fact existed on the issue of poor visibility resulting from fog.

¶10. As stated, on appeal, we apply a de novo standard to our review of a trial court's grant of summary judgment. *See Spann v. Shuqualak Lumber Co.*, 990 So. 2d 186, 189-90 (¶¶6, 11-13) (Miss. 2008) (holding that whether fog emitted from the lumber-drying plant was actually present at the time of the collision and, if so, whether the fog constituted an unreasonably dangerous condition or cause-in-fact of the collision, constituted a question of fact for the jury, thus precluding summary judgment).

¶11. In its order granting summary judgment in favor of McCorkle, the trial court quoted *White v. Miller*, 513 So. 2d 600, 602 n.3 (Miss. 1987), and recognized that "where two cars are traveling in the same direction, the primary duty of avoiding a collision rests with the following driver and[,] in the absence of an emergency or unusual condition[,] he is negligent as a matter of law if he runs into the car ahead." The trial court ruled that "absent an emergency or unusual condition, it was [Ned] who had the primary duty to avoid hitting McCorkle's trailer." The trial court found that "no evidence establishes the stretch of roadway was foggy at the time. . . . The only claim that the area in question was under fog is from the complaint" filed by the Clarks.

¶12. Regarding the deposition and evidence provided by Walton, the Clarks' expert witness, the trial court found that Walton admitted that in preparing his accident-reconstruction report, "[Walton] did not review any deposition transcripts, written discovery, or interview [Ned], and [he] only visited the accident scene years after the accident took

4

place. . . . Walton's sole basis for determining that foggy conditions existed was the complaint itself." The trial court thus held that Walton's testimony "is not based on sufficient evidence, and cannot establish a genuine issue of material fact."

¶13. After reviewing the evidence submitted, the trial court also opined that McCorkle did not commit negligence per se in regard to the illumination of his tractor with reflective gear or lights, explaining:

> [N]o statute requires [McCorkle] to display an emblem or tape, or have lights on his tractor. However, he still has a general duty to act as a reasonable person would. [Ned] alleges that McCorkle breached this duty by using a reflective triangle that was worn and had lost its reflectiveness. The only evidence to support this is Walton's expert testimony. But Walton never observed the triangle at the time of the accident. Instead, the first Walton had seen of the triangle was in 2015, after the triangle had been moved to [the] gate and sat in sunlight for two years.[2]

¶14. Regarding the Clarks' claim of gross negligence, the trial court held: "Because this [c]ourt finds there to be no evidence of negligence on the part of [McCorkle], his actions cannot rise to the higher level of gross negligence. Even were there evidence of negligence, the [c]ourt finds [that the Clarks have] presented no evidence that McCorkle's conduct evinced a reckless indifference to any consequences of driving his trailer."

¶15. However, the Clarks submit that they provided sufficient evidence to prove genuine issues of material facts existed in order to defeat summary judgment. Contrary to the trial

---

[2] In its order granting summary judgment, the trial court cited Mississippi Code Annotated section 63-7-91 (Rev. 2013) and stated that "Mississippi statutory law generally exempts farm related vehicles from equipment and identification requirements," but recognized that "[n]o state appellate court in Mississippi has stated whether the provisions of [section] 63-7-91 are required for farm tractors." In its order denying the Clarks' motion for reconsideration, the trial court further stated "no state law imposed a duty on McCorkle to display the placard at all."

5

court's determination, the Clarks assert that Ned's deposition testimony reflects that an obstruction affected his vision at the time of the accident:

> Q:    Now I notice, I remember you said a while ago you said that there was this little—approximately how high off the—off the regular road surface was this knoll?
>
> A:    Just a little incline, just a little incline. I don't know what—what else to say. It was a small hill.
>
> Q:    So just a very slight incline?
>
> A:    Small, small hill.
>
> Q:    **Okay, other than that, were there any other obstructions to your vision?**
>
> A:    No, sir.

(Emphasis added). Ned explained through his deposition testimony that he did not see McCorkle's tractor and trailer until he came over the hill. Ned also provided deposition testimony that on the morning of the accident, patches of fog appeared in low-lying areas.[3]

---

[3] The record reflects that Ned provided the following testimony in his deposition:

> Q:    Now, around what time did the accident take place?
>
> A:    Seven o'clock.
>
> Q:    What was the weather like that day?
>
> A:    It was cool. A little bit cool and a little foggy early that morning.
>
> Q:    Was it foggy in patches or foggy—
>
> A:    Just in patches. At . . . low-lying areas. Like I said, it was cool, had my window up.
>
> . . . .

6

The Clarks' complaint further alleged that "[a]t the time of the collision visibility in the area was very poor due to low-light conditions at the dawn of day and heavy fog in the area."

¶16. The Clarks also alleged in their complaint that McCorkle was negligent for failing to properly illuminate the tractor and trailer. The record reflects that the Clarks retained Walton, an accident-reconstruction specialist, to prepare an expert report on behalf of the Clarks. In preparing his report, the record reflects that Walton reviewed the following: the Mississippi uniform crash report; a personal site inspection of the scene; photographs taken of the scene by Walton; measurements taken by Walton utilizing forensic mapping techniques; a crash-reconstruction report offered by Brett Alexander; historical sunrise data for the date of the collision; Walton's interview with McCorkle; and commonly accepted methodology in the field of accident reconstruction.

¶17. In his report, Walton opined that with "low visibility and fog present," Ned "did not possess the time, nor distance needed to perceive and react to the hazard of the tractor." Walton also provided the following in his report:

> It is also my opinion that [McCorkle] was the sole proximate cause of this collision by operating an oversized tractor on the state highway in poor lighting conditions without adequate warning to oncoming drivers. [McCorkle] was completely aware that this vehicle caused dangerous conditions when operated on this highway due to its size and continued to operate this vehicle in the early morning hours with poor lighting conditions.

¶18. In his reply in support of his motion for summary judgment, McCorkle alleged that the Clarks failed to disclose that Walton's findings of wear and reduced reflective

---

Q: Okay. Was there fog on the knoll?

A: Not on the knoll. In the low-lying area.

capabilities were made over two and a half years after the accident in question. McCorkle asserted that Walton acknowledged in his deposition testimony that he had no way of knowing the reflective qualities of the triangle placard on the day of the accident. The record reflects, however, that Walton spoke directly to McCorkle about the accident. McCorkle informed Walton that "right after the accident had occurred," he took the reflective triangle off of the tractor and put it on the gate "because it was so old."

¶19. The Mississippi Supreme Court has provided that the test applicable in determining the liability of a defendant in an automobile-collision case is "whether the negligence prior to or at the time of the collision was a proximate or contributing cause of the accident." *Elsworth v. Glindmeyer*, 234 So. 2d 312, 320 (Miss. 1970). *See and compare Jamison v. Barnes*, 8 So. 3d 238, 246-47 (¶¶21, 26) (Miss. Ct. App. 2008). In *Jamison*, 8 So. 3d at 246-47 (¶¶21, 26), this Court addressed whether an unusual or emergency condition existed at the time of a collision between an automobile and a tractor, thereby proximately causing the collision. In that case, the trial court granted Barnes's (the motorist) motion for summary judgment and denied Jamison's (the tractor driver) motion for summary judgment. *Id*. at 242 (¶6). On appeal, this Court reversed the trial court, finding that "even if Jamison were negligent per se [for violating provisions of the Uniform Highway Traffic Regulation Law], it would not bar his recovery if he could show that Barnes was also negligent, under the familiar doctrine of comparative negligence." *Id.* at 246 (¶21). The *Jamison* Court explained that "[e]ven if comparative negligence were taken off the table, Mississippi Code Annotated section 63-7-81 [(Rev. 2013)] . . . further provides that, 'Nothing in this chapter shall be so

construed as to curtail or abridge the right of any person to prosecute a civil suit for damages by reason of injuries to person or property resulting from the negligent use of the highways by any motor vehicle, or its owner[.]'" *Id*.

¶20.    The *Jamison* Court also recognized that "Mississippi has never adopted a per se rule that the driver of the following car is negligent if he collides with the rear of a preceding vehicle." *Id*. at 242 (¶10).  The *Jamison* Court quoted the supreme court's decision in *White*, 513 So. 2d at 601, which provided the following guidance:

> The driver of a vehicle following along behind another, and not attempting to pass, has a duty encompassing four interrelated functions:  he must have his vehicle under proper control, keep a proper look-out ahead, and commensurate therewith drive at a speed and sufficient distance behind the preceding vehicle so that should the preceding vehicle stop suddenly, he can nevertheless stop his vehicle without colliding with the forward vehicle.

*Jamison*, 8 So. 3d at 242-43 (¶10) (quoting *White*, 513 So. 2d at 601).  The *Jamison* Court cautioned that "where there is evidence of an emergency or unusual condition, this operates as a 'non-rule' that presents a jury question as to whether the circumstances rise to the level of emergency or abnormal condition." *Id*. at 243 (¶10).[4]

¶21.    Additionally, the supreme court in *White*, 513 So. 2d at 601, cited several cases where a factual question existed as to the presence of an emergency or unusual condition. *Id.*  One of those cases was *Szarapski v. Joaquin*, 292 P.2d 959 (Cal Dist. Ct. App. 1956).  In *Szarapski*, the defendant unexpectedly encountered the plaintiff's vehicle, which was

---

[4] *Compare Brown-Miller Co. v. Howell*, 224 Miss. 136, 147, 79 So. 2d 818, 821 (1955) (supreme court found that evidence raised a question of fact for the jury as to whether the position of a truck on the shoulder of the road in dense fog was negligence that "proximately caused or contributed to the injury and death of the decedent" who hit the truck on the shoulder of the road).

"moving slowly or stopped, and perhaps unlighted" at 1:00 a.m. *Id.* at 962. The appellate court found that whether the defendant failed to keep a proper lookout or was following the plaintiff's vehicle too closely were questions of fact for the jury. *Id.* Importantly, the appellate court further found that whether the plaintiff's vehicle was moving too slowly without adequate warning was also a question of fact for the jury. *Id.* Therefore the jury, not this Court, must decide whether or not the circumstances rise to a level of emergency or abnormal conditions. *See White*, 513 So. 2d at 603 n.3.

¶22. We recognize that "[t]he moving party has the burden of demonstrating that no genuine issue of material facts exists, and the nonmoving party must be given the benefit of the doubt concerning the existence of a material fact." *Jamison*, 8 So. 3d at 242 (¶7) (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 979 (¶7) (Miss. 2001)). Upon review, we find that the Clarks presented sufficient evidence showing that genuine issues of material fact precluding summary judgment exist as to the following: (1) whether the fog constituted an unusually dangerous condition; and (2) whether McCorkle was negligent in the illumination of his trailer in said fog at the time of the collision. Based upon the foregoing and in applying the law to this case, we therefore reverse the trial court's grant of summary judgment and remand this case for trial.

¶23. Since we reverse the trial court's grant of summary judgment and remand this case for trial, the Clarks' two remaining claims—that the trial court abused its discretion in dismissing the opinion and testimony of Walton and erred in failing to grant the Clarks their constitutional right to a trial by jury—are rendered moot, and we will not address them.

¶24.    **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., FAIR, WESTBROOKS AND TINDELL, JJ., CONCUR.   GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES AND WILSON, JJ.**

**GREENLEE, J., DISSENTING:**

¶25.    The majority reasons that the Clarks presented sufficient evidence showing that genuine issues of material facts exist regarding: (1) whether fog constituted an unusually dangerous condition; and (2) whether McCorkle was negligent in the illumination of his farm trailer at the time of the collision. I respectfully disagree and therefore dissent.

### DISCUSSION

> **I.    Whether the Clarks produced sufficient evidence of an unusual or emergency condition**.

¶26.    As the plaintiffs in a negligence claim, the Clarks bore the burden to prove all of the required elements—duty, breach, causation, and damage. *Sanderson Farms Inc. v. McCullough*, 212 So. 3d 69, 76 (¶17) (Miss. 2017). In granting McCorkle's motion for summary judgment, the circuit court held the Clarks failed to sufficiently show the existence of an emergency or unusual condition and therefore could not show McCorkle was negligent in pulling his trailer.

¶27.    As the circuit court noted, absent an emergency or unusual condition, a following vehicle has a duty to avoid colliding with a moving vehicle in front of him. *Reese v. Summers*, 792 So. 2d 992, 996 (¶9) (Miss. 2001). There is an exception, however, to this general duty when sufficient evidence of an emergency or unusual condition is presented. The presence of such evidence "presents a jury question as to whether the circumstances rise

11

to the level of emergency or abnormal condition." *Jamison v. Barnes*, 8 So. 3d 238, 243 (¶10) (Miss Ct. App. 2008). Thus, absent an emergency or unusual condition, it was Ned who had the primary duty to avoid hitting McCorkle's trailer.

¶28.    The majority finds that the Clarks produced sufficient evidence showing that genuine issues of material fact existed regarding (1) whether fog constituted an unusually dangerous condition; and (2) whether McCorkle was negligent in the illumination of his farm trailer at the time of the collision.

¶29.    The Clarks argue the factual situation before the Court illustrates an emergency or unusual condition—the collision was unavoidable because Ned suddenly came upon a slow-moving tractor with inadequate visibility under foggy conditions. They argue that their sworn complaint and the testimony of their expert produced sufficient evidence, creating a genuine issue of material fact as to (1) the existence of fog and (2) the reflectiveness of McCorkle's slow-moving-vehicle sign or safety emblem.

¶30.    McCorkle argues that: (1) the Clarks' verified or "sworn to" complaint was insufficient to establish a genuine issue of fact regarding the weather conditions on the morning of the accident because Ned admitted that there was no fog where the accident occurred, and (2) the undisputed evidence shows McCorkle was operating his trailer in a reasonable manner—by having a "slow-moving-vehicle sign" on the left-back corner of his trailer.

A.    *Existence of Fog*

¶31.    The majority finds that the Clarks produced sufficient evidence to create a genuine

issue of material fact regarding whether the fog constituted an unusually dangerous condition. The majority lends credence to the opinion of the Clarks' expert, Jason Walton. However, the circuit court assessed Walton's opinion correctly and, further, was correct in its determination of whether or not fog contributed to the accident.

¶32. The circuit court reviewed the issue of fog twice, first on McCorkle's motion for summary judgment and then on the Clarks' motion for rehearing. Upon its first review, the circuit court found the Clarks' proffer—in opposition to the motion for summary judgment—was insufficient to establish a genuine issue of material fact concerning the existence of foggy conditions.

¶33. The evidence proffered by the Clarks to support the assertion of foggy conditions at the time of the accident relied only on their verified complaint and testimony of their expert. The majority references the verified complaint as "Ned's sworn affidavit filed with his complaint." However, only a "Verification" was attached to the complaint. This verification attested that the facts in the foregoing complaint were "true and correct." It, therefore, was a verified or "sworn to" complaint. The complaint merely stated that "[a]t the time of the collision visibility in the area was very poor due to low light conditions at the dawn of day and heavy fog in the area." However, the complaint did not "set forth specific facts showing that there [was] a genuine issue for trial." M.R.C.P. 56(e). Further, as McCorkle correctly points out, parties opposing summary judgment are "required to do more than rest on the mere allegations of their pleadings, sworn or unsworn." *Stuckey v. Provident Bank*, 912 So. 2d 859, 868 (¶19) (Miss. 2005). Next, the circuit court examined the underlying bases for

Walton's testimony and found that the Clarks' expert had relied solely on the allegations in the Clarks' verified complaint that it was foggy at the time of the accident. Therefore, in granting summary judgment, the circuit court found that the Clarks' verified complaint and expert testimony were insufficient to establish a genuine issue of material fact.

¶34.    Upon the Clarks' motion for rehearing, the circuit court reexamined its decision in light of whether they presented sufficient evidence showing "a need to correct a clear error of law or to prevent manifest injustice." *Bang v. Pittman,* 749 So. 2d 47, 52-53 (¶29) (Miss. 1999) (overruled on other grounds). Denying their motion for rehearing, the circuit court found the Clarks relied on the allegations of fog within their verified complaint and the opinion of their expert.

¶35.    In determining whether fog was at issue, the court reviewed the deposition of Ned Clark, which was proffered by McCorkle in support of the motion for summary judgment. Ned testified that there was a "[k]noll" or "[j]ust a little hill" with "[j]ust a little incline, just little incline," and that he "seen the tractor" as soon as he came over the little hill. Moreover, later in his deposition testimony, Ned stated fog was "[n]ot on the knoll."[5] Thus, by his own admission, other than the "small, small hill," there were no other obstructions to Ned's vision on the morning of the accident.

---

[5] Previously in his testimony Ned stated that the weather condition was "[a] little foggy early that morning" but "[j]ust in patches. At low—low-lying areas." The majority presupposes that fog existed at the time of the accident. However, Ned testified that "as soon as [he] came over the little hill" he had "[s]een the tractor" and was "[r]ight on it. It was visible when I topped the hill." Therefore, his earlier testimony regarding fog is immaterial because the accident did not occur at a low-lying area but rather at the crest of the hill or small knoll, which he admits had no fog on it.

¶36.    Further, the court examined the testimony of Walton, the Clarks' expert. Not only did Walton's testimony reveal that he had not looked at any specific documents in preparing his report, but also he admitted that he had not "reviewed any deposition transcripts" and that "[he] just had [the Clarks'] original complaint." Thus, the court found that Walton's opinion that fog existed at the site was directly contrary to Ned's own testimony.[6] Therefore, the circuit court reasoned, the expert's opinion was purely speculative, and thus insufficient to defeat summary judgment. Based upon what the Clarks proffered before the circuit court, the depositions of Ned and Walton, and the court's review of the other evidence before it, the circuit court's determination that no genuine issue of material fact existed was correct.

### B.    Reflectiveness of Slow-Moving-Vehicle Sign

¶37.    The majority finds that the Clarks produced sufficient evidence to create a genuine issue of material fact regarding whether McCorkle was negligent in the illumination of his trailer at the time of the collision. Again, the majority uses Walton's expert opinion. However, the circuit court correctly assessed Walton's opinion and, further, was correct in its determining whether or not there was a question of law or material fact on the issue of negligence in the operation of McCorkle's tractor and trailer.

¶38.    The Clarks asserted that McCorkle's tractor and trailer were not properly illuminated under the circumstances.[7] In support, the Clarks cited several statutes that the circuit court

---

[6] Ned's deposition had been filed in support of McCorkle's motion for summary judgment. The Clarks did not use Ned's deposition to defend against the motion for summary judgment.

[7] In their complaint, the Clarks asserted that McCorkle "fail[ed] to properly outfit his vehicle and trailer . . . for low light, poor weather and visibility conditions."

found inapplicable because they all either applied solely to automobiles; provided exemptions for farm equipment, i.e. tractors and trailers; or dealt with required vehicle signs. Notwithstanding the inapplicability of these statutes, the circuit court reasoned, McCorkle did not breach his general duty of a reasonable person because the Clarks did not produce evidence of the reflective triangle's condition at the time of the accident.

¶39.    The majority relies on *Jamison v. Barnes,* 8 So. 3d 238 (Miss. Ct. App. 2008), and the doctrine of comparative  negligence to suggest that whether McCorkle's operation of his tractor was reasonable under the circumstances is a question best left to the jury. Generally, the following car owes a duty to avoid running into the rear of the vehicle in front of it. While the occurrence of a rear-end collision does not make the following driver negligent per se, the doctrine of comparative negligence requires that the other party be negligent as well. Here, McCorkle was not negligent in the operation of his tractor because he is exempt from the equipment requirements of title 63 of the Mississippi Code Annotated, and it is undisputed that the accident occurred after sunrise. *See* Miss Code Ann. § 63-7-9 (Rev. 2013). Therefore, absent the presence of fog, there are no genuine issues of material fact left for a jury to decide.

¶40.    Regarding McCorkle's statutory duty, the circuit court properly found that none of the cited statutes applied to McCorkle. The Clarks alleged that McCorkle violated two statutes, Mississippi Code Annotated sections 63-3-709 (Rev. 2013) and 63-13-3 (Rev. 2013) (repealed 2015). As the circuit court found, section 63-3-709, which deals with signaling, is inapplicable because the record does not containing any allegations of McCorkle performing

a maneuver requiring a signal. As for section 63-13-3, the circuit court properly found it inapplicable because it explicitly provides an exception to its requirements for "farm trailers engaged in farm operations, or to any farm tractor, combine, cotton picker, semitrailer, pole trailer, or other agricultural or farming equipment or machinery, or any combination thereof, used primarily for agricultural purposes." Miss. Code Ann. § 63-13-3.

¶41. With those statutes being inapplicable, McCorkle still owed a general duty of reasonable care under the circumstances. The Clarks asserted McCorkle violated this duty because his tractor and trailer were not properly visible under the circumstances. The circuit court found that the Clarks did not present sufficient evidence of the triangle's condition at the time of the accident, and therefore no genuine issue of material fact existed. I agree.

¶42. The only evidence the Clarks provided regarding the condition of the triangle was the testimony of their expert, Walton. Walton, however, stated that his first observation of the reflective triangle was over two years after the accident, and he acknowledged that a triangle's reflective quality can deteriorate over that period. While McCorkle did personally speak with Walton and tell him that he took the reflective triangle off the tractor and put it on a gate because of old age, this does not show a genuine issue of material fact. Walton did not observe the triangle at the time of the accident and admitted that he had "no way of knowing exactly how reflective it was on the day of the accident." The fact that McCorkle removed the triangle after the accident does not produce sufficient evidence of the condition of the triangle at the time of the accident. Further, "right after the accident" does not provide a definite time period as to when it was moved. Walton did not view the triangle until nearly

17

two years after the accident, and therefore he has no knowledge of the triangle at the time of the accident nor the condition of the sign when it was removed and placed on the gate.

¶43. Therefore, his expert opinion and report could not sufficiently raise an issue of material fact as to the condition of the reflective quality of the triangle on the day of the accident or if its condition contributed to the accident where Ned rear-ended McCorkle during daylight hours.

## II. Whether Walton's "expert" testimony should have been admitted.

¶44. Though not addressed by the majority, the Clarks on appeal assert that the circuit court erred in not considering the expert testimony of Walton without conducting a *Daubert*[8] hearing or giving the Clarks the opportunity to be heard. As noted by the Clarks in their brief, a circuit court is not required to hold a *Daubert* hearing, but is only required to allow the parties to have an opportunity to be heard. *Edmonds v. State*, 955 So. 2d 787, 792 (¶10) (Miss. 2007). A circuit court is given great latitude is deciding how to test an expert's reliability. *Id.* It is in the trial court's purview "to decide whether or when special briefing or other proceedings are needed to investigate reliability." *Id.* (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). This Court will not upset a circuit court's exclusion of expert testimony unless it is clearly arbitrary or erroneous. *Patterson v. Tibbs,* 60 So. 3d 742, 748 (¶19) (Miss. 2011). In the case at hand, the circuit court did not abuse its discretion in not considering Walton's testimony.

¶45. The Clarks assert that in the face of challenged expert testimony, they must be given

---

[8] *Daubert v. Merrell Dow. Pharm. Inc.*, 509 U.S. 579 (1993).

a fair opportunity to be heard. However, this is not applicable to the posture of this case. The circuit court, in granting summary judgment, did not actually strike Walton's expert testimony. The circuit court found that it was based on speculation and was insufficient to defeat summary judgment. *See Rogers v. Barlow Eddy Jenkins P.A.*, 22 So. 3d 1219, 1225 (¶21) (Miss Ct. App. 2009) ("Summary judgment may not be defeated through expert opinions that are not based on facts but instead are based on a guess, speculation, or conjecture.").

¶46.    While the circuit judge noted Mississippi Rule of Evidence 702's requirement for reliability, the judge found that regardless of whether the testimony was admissible, it did not establish a genuine issue of material fact because it was not supported by the evidence in the case. The circuit judge found that Walton offered no proof of the weather conditions that day other than those recited in the Clarks' sworn, verified complaint. The court noted that Walton qualified the critical part of his analysis by stating "*if* foggy conditions were present coupled with the low-light conditions on the road way"[9] (emphasis added), and that Walton admitted that he did not know of the triangle's condition at the time of the accident. The circuit judge reasoned that Walton's testimony was based on conjecture and speculation, and therefore was not expert testimony or an opinion that could assist the fact-finder. As the testimony was not

---

[9] The majority utilizes Walton's statement that with "low visibility and fog present," Ned "did not possesses the time, nor distance needed to perceive and react to the hazard of the tractor" to infer the creation of a genuine issue of material fact. However, Ned testified that there was no fog on the hill. Moreover, the expert's testimony regarding the conditions at the time of the accident was based only on the verified complaint, which notes such conditions as contrary to the police report that describes them as daylight, dry, and clear. The expert's testimony not being based on evidence, therefore, cannot create a genuine issue of material fact.

based on the evidence, but rather on speculation and conjecture, Walton's testimony could not be used to defeat summary judgment.

### III. Whether the trial court, in granting summary judgment, denied the Clarks their constitutional right to a jury trial.

¶47. Although not reached by the majority, the Clarks also assert the trial judge's grant of summary judgment denied their constitutional right to a jury trial. While the Clarks correctly assert Article 3 of the Mississippi Constitution of 1890 guarantees the right to a trial by jury, "[t]rial by jury is about disputes of fact." *Towner v. Moore ex rel. Quitman Cty. Sch. Dist.*, 604 So. 2d 1093, 1098 (Miss. 1992). Absent such disputed facts, a properly granted motion for summary judgement precludes the right to a jury trial. *See Brown v. Credit Ctr. Inc.*, 444 So. 2d 358, 362 (Miss. 1983) ("There is no violation of the right of trial by jury when judgment is entered summarily in cases where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."). As discussed above, there was not sufficient evidence to establish genuine issues of material fact, and therefore the circuit court did not violate the Clarks' constitutional right to a jury trial.

### CONCLUSION

¶48. The Clarks failed to produce sufficient evidence to create genuine issues of material fact regarding both the presence of fog and McCorkle's negligent operation of his tractor and trailer. Further, the Clarks failed to produce evidence showing McCorkle breached a duty of care, which proximately caused Ned's injury. The circuit court was correct in granting McCorkle's motion for summary judgment. Therefore, I respectfully dissent.

**BARNES AND WILSON, JJ., JOIN THIS OPINION.**

20